UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY BRADSHAW,
    Plaintiff,
-against-
CITY OF NEW YORK; RICHARD A. BROWN;
DIANNA MEGIAS; KENNETH APPELBAUM;
ROBERT C. SHALER; MARIE SAMPLES;
MARY QUIGG; TATYANA GRYAZEVA;
KYRA KEBLISH; HOLLY SERRETTE; and
LESLIE C. KAMELHAR; and JOHN DOE, 1-4
    Defendants

RECEIVED
SDNY PRO SE OFFICE
2021 NOV 30 AM 10: 31

COMPLAINT

Jury Trial Demanded

## PRELIMINARY STATEMENT

1. Plaintiff bring this action for compensatory damages, punitive damages and injunctive relief under 42 U.S.C. § 1983 for violation of his civil rights, as said rights are secured by said statute and the Constitution of the United States. As set forth more fully herein, plaintiff assert (1) a Fourteenth Amendment substantive due process claim to informational privacy against defendant Robert C. Shaler, Marie Samples, Mary Quigg, and Tatyana Gryazeva; (2) a Fourteenth Amendment due process and equal protection claim to a fair trial against defendant Brown, Megias, Appellaum, Quigg and Tatyana Gryazeva; (3) a Fourteenth Amendment due process claim against defendant Serrette and Kamelhar; and (4) a Fourteenth Amendment due process claim that Civil Rights Law § 50-b(2)(a); and Conspiracy against defendant Brown, Megias, Appelbaum, Shaler, Samples, Quigg, Gryazeva, Keblish and Doe 1-4

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C §§ 1983 and 1985, and jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

1

4. Plaintiff, Jay Bradshaw, is a citizen and resident of the State of New York and of the United State,

5. Defendant, City of New York, of which the County of New York and Queens is a subdivision, is a municipal corporation of the State of New York and is a resident of the Southern District of New York

6. Defendant, RICHARD A. BROWN, at all relevant times, was the District Attorney of the Queens District Attorney's Office, and employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and official capacities.

7. Defendant, DIANNA MEGIAS and KENNETH APPELBAUM, at all relevant times, were assistant district attorneys in Queens District Attorney's Office, and employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usages of the State of New York and the City of New York and the City of New York, and acted within the scope of their employment. They are sued in their individual and official capacities.

8. Defendant, ROBERT C. SHALER, at all relevant time, was the director of Forensic Biology at the Office of Chief Medical Examiner, and employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usages of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual capacity and official capacities.

9. Defendant, MARIE SAMPLES, MARY QUIGG, TATYANA GRYAZEVA, KYRA KEBLISH, and JOHN DOE #1—, at all relevant time, were laboratory analyst at the Office of Chief Medical Examiner, Department of Forensic Biology, and employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usages of the State of New York and the City of New York, and acted within the scope of their employment. He is sued in his individual capacity and official capacities.

10. Defendant, HOLLY SERRETTE and LESLIE C. KAMELHAR, at all relevant times, were Record Access Offices at the Office of Chief Medical Examiner, were employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York,

2

and acted within the scope of their employment. They are sued in their individual and official capacity.

11. The Queens District Attorney Office (QDAO) is an agency of the CITY OF NEW YORK. The District Attorney, assistant district attorneys employed by the D.A.'s Office are agents and employees of the City of New York, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

12. Similarly, the Office of Chief Medical Examiner (OCME) is an agency of the City of NEW YORK. Laboratory director, and Analysts, employed by the OCME are agents and employees of the City of New York, which is legally responsible for torts they committed within the scope of their employment and/or under color of law.

## FACTS

A. Laboratory Case Number FB04-S201 and FB04-0751 (Brooklyn Criminal Case)

13. The New York City Police Department (PD) investigated the rape of a Brooklyn women. In connection with the crime, a condom wrapper recovered at the scene of the crime, a rape kit performed on the victim as well as her clothing, was submitted as evidence to the OCME for DNA testing and comparison. This evidence was assigned under OCME laboratory case number FB04-0751.

14. The police subsequently arrested plaintiff for the rape committed against the Brooklyn women, and, at the same time, obtained two (2) saliva swabs from plaintiff and submitted them as evidence to the OCME for DNA testing and comparison. This evidence was assigned under OCME laboratory case number FB04-S201.

15. Shockingly, although no DNA evidence was recovered in the case, defendant Quigg declared a "cold hit" match between plaintiff's DNA profile generated from the saliva swabs under OCME laboratory case number FB04-S201 and OCME laboratory case number FB04-0751 (although no DNA was recovered).

16. Defendant Quigg and Samples, who reviewed the DNA test and reports in laboratory case number FB04-S201 and FB04-0751, declared a false match against plaintiff because he was a suspect of a rape case.

17. There was an unwritten policy within the OCME for OCME employees to declare

3

false matches against suspects in rape case which was tacitly approved by defendant Shaler.

18. This violated OCME protocol and procedures.

19. Defendants, individually and collectively, violated plaintiff rights to due process and equal protection of law.

B. Laboratory Case Number FB04-0684 [and FB04-0864] (Queens Criminal Case)

20. The police investigated a burglary and rape of a Queens women. In connection with the crime, as is relevant here, the victim's bra, pants and blue T-shirt was recovered from the scene of the crime by officer Eric Cruz, who submitted them as evidence to the Police Laboratory for preliminary examinations.

21. Upon information and belief, at the Police Laboratory, K. Pfeiffer, criminalist, conducted a preliminary examination on the bra, pants and blue T-shirt consisting of a tape-lift on the inside and outside of each clothing item, and hairs were removed and safeguarded. No DNA was found on the victim clothing.

22. Nevertheless, the bra, pants and blue T-shirt were submitted as evidence to the OCME and were received in the OCME Evidence Unit, under laboratory case number FB04-0684, by defendant Kiblish.

23. Upon information and belief, at the OCME laboratory, defendant Gryazeva purportedly examined the victims blue T-shirt and found two whitish stains on the back that tested positive for semen, of which underwent DNA testing.

24. Upon information and belief, plaintiff's DNA swabs obtained in connection with his Brooklyn that was assigned under OCME laboratory case number FB04-5201 was tested instead of the purported semen from the blue T-shirt under the guise of a second OCME laboratory case number FB04-0864.

25. More specifically, plaintiff DNA swabs were retested and his DNA profile was re-generated under a second OCME laboratory case number FB04-0864, and said DNA profile was utilized under laboratory case number FB04-0684, and compared with OCME laboratory case number FB04-5201 and deemed a match.

4

26. Upon information and belief, during the DNA testing, defendant Doe #1 (Analyst HLC) supplemented an electropherogram he performed with the electropherogram performed by defendant Doe #2 (Analyst JAP), and Doe #2 (Analyst JAP) substituted the electropherogram by defendant DOE #3 (Analyst LMB). This violated OCME laboratory protocol and procedures and is indicative of fraud.

27. Defendant Quigg and Samples reviewed the DNA test and reports related to laboratory case number FB04-0684 [and FB04-0864] and approved the results despite the fact that OCME laboratory technician violated OCME protocol and procedures.

28. There is an unwritten policy within the OCME for OCME employees to violate OCME laboratory protocol and procedures, and for said violations to be tacitly approved by defendant Shaler.

29. Defendant Quigg then redisclosed plaintiff's DNA profile and the purported match to the DNA profile generated from the blue T-shirt to the Queens County District Attorney Office (QDAO), including defendant Megias and Appelbaum.

30. Since plaintiff's DNA profile was generated from the saliva swabs obtained in connection with his Brooklyn case, defendant Quigg was prohibited from comparing plaintiff's DNA profile and re-disclosing the profile to defendant Megias and Appelbaum.

31. Plaintiff has an exclusive property right to control the dissemination of his genetic make up.

32. Defendant Megias and Appelbaum was aware from the Police Laboratory preliminary examination that there were no stains anywhere on the victims' blue T-shirt and, thus, the DNA test and reports relating to the blue T-shirt was false.

33. Defendant Megias and Appelbaum conspired with defendant Quigg, Gryazeva and Keblish to falsify the DNA test and reports to render a DNA match with plaintiff's DNA profile and evidence related to OCME laboratory case number FB04-0684.

34. At plaintiff's criminal trial, defendant Quigg, Gryazeva and Appelbaum misled the state court into thinking that DNA evidence profile generated from was found on the back of the victim's blue T-shirt which match plaintiff's DNA profile when, in fact,

5

~~34.~~ it was no DNA found on the blue T-shirt and plaintiff's DNA profile was re-generated under the second OCME laboratory case number FB04-0864.

35. It is worth noting that defendant Gryazeva, ~~who~~ proclaimed that she was not involved in the DNA testing but was directly involved in the DNA testing relating to the blue T-shirt, and she proclaimed that the second laboratory case number FB04-0864 means "different DNA" was tested.

36. Defendants, individually and collectively, violated plaintiff's right to due process ~~an~~ to a fair proceeding and equal protection of law.

C. Laboratory Case Number FB04-0781 (Bronx Criminal Case)

37. The police investigated a criminal sexual act of a Bronx women. In connection with the crime, as is relevant here, a black plastic bag purportedly containing DNA was recovered at the scene of the crime, and a rape kit performed on the victim, was submitted ~~to~~ as evidence to the OCME for DNA testing and comparison. The evidence in this case was assigned OCME laboratory case number FB04-0781.

38. The black plastic bag was received in the OCME Evidence Unit by defendant Keblish, who did not sign the chain of custody form in violation of OCME laboratory protocol and procedures, but wrote "FB04-0782 KK 8/2/04" on the Property Clerk's Invoice form.

39. Upon information and belief, defendant Gryazeva and Keblish was directly involved in the DNA evidence related to the black plastic bag under laboratory case number FB04-0781, and defendant Quigg supervised the DNA testing.

40. Upon information and belief, plaintiff's saliva swabs DNA extract samples assigned under laboratory case number FB04-S201 were commingled with the victim's anal swabs and smears DNA extract samples at the laboratory storage in cryobox E231/E232 by defendant Keblish and Gryazeva.

41. Plaintiff's DNA profile, generated from the saliva swabs obtained by the police in connection with his Brooklyn arrest, and assigned under OCME laboratory case number FB04-S201, was compared to evidence in the Bronx case and the results were redisclosed to the Bronx County District Attorney Office by defendant Quigg.

6

42. Plaintiff had an exclusive property right to control the dissemination of his genetic make up.

43. Defendants, individually and collectively, violated plaintiff's right to due process and equal protection of law.

D. Plaintiff's FOIL Request for OCME laboratory Case number FB04-0751 ~~and FB04-0684~~

44. By letter dated June 14, 2021, Plaintiff requested pursuant to FOIL to obtain the following records from the OCME:
   (a) the complete DNA case file for laboratory case number FB04-0751;
   (b) Evidence Unit employees/analyst sign-in and sign-out logs;
   (c) Correspondence between lab personnel and law enforcement, prosecutors or other state/county officials;
   (d) All documents related to the case that were referenced regularly but are kept in a place other than the case file;
   (e) Copy of all documentation regarding corrective action when case work errors are detected pursuant to the Quality Assurance Standard;
   (f) The quality assurance review (administrative and technical reviews);
   (g) Documentation from the laboratory accreditation assessment/audit, including DNA Quality Assurance Standards audits and ongoing communications from the year 2004-2012;
   (h) Proficiency testing results of each analyst, technical reviewer and technicians in the case;
   (i) The curriculum vitae of each analyst, technician and technical reviewers;
   (j) The quality assurance program manual for the year 2004 and 2005;
   (k) The employees/analysts sign-in and sign-out logs at laboratory;
   (l) Laboratory protocols used for all analytical procedures, including evidence handling procedures; serology/evidence screening testing procedures; reagent preparation and use methods; sample preparation methods; extraction and quantitation methods; autosomal STR methods and/or other relevant DNA testing methods; instrument calibration, maintenance and operating methods; software operation methods; data analysis, interpretation and reporting methods; processes for monitoring of the analytical procedures using controls and standards; and administrative and technical review procedures for case files and reports.

45. By letter dated November 20, 2020, defendant Serrette claimed as to number 5, 7, 10 and 12 ~~with respect to plainti~~

17

of plaintiff's FOIL request "it will be burned to a CD and mail to [plaintiff] under seperate cover"; denied the request as to items 1, 2, 3, 4, 8 and 9 pursuant to Pub. Off. Law § 87(2)(b) as disclosure would constitute an unwarranted invasion of personal privacy; and denied the request as to item 6 and 11, as those requests were vague and overbroad.

46. Because plaintiff did not receive a response to his initial FOIL request, dated June 14, 2020 from defendant Serrette, nor his initial appeal dated August 17, 2020, plaintiff filed a Verified Petition dated September 7, 2020 in the Supreme Court seeking an order directing OCME to produce the records sought in his June 14, 2020 FOIL request.

47. Defendant Serrette then responded to plaintiff's FOIL request after being served with plaintiff's Verified Petition, and plaintiff appealed Serrette's response to defendant Kamelhar.

48. In response to plaintiff's Petition, defendant Serrette and Kamelhar misled the state court into thinking plaintiff's FOIL request as to item 5, 7, 10 and 12 were disclosed; items 1, 2, 3, 4, 8 and 9 were exempted pursuant to Pub. Off. Law § 87(2)(b) wherein disclosure would constitute an unwarranted invasion of personal privacy, since plaintiff is not a named party in the case file and the information are not public information and relate to personal DNA testing information; and item 6 and 11 are denied as vague and overbroad.

49. In fact, plaintiff was never provided item 5, 7, 10 and 12; items 1, 2, 3, 4, 8 and 9 were not exempted pursuant to Pub. Off. Law § 87(2)(b) since plaintiff is a name party in the case file and plaintiff was the criminal defendant in that case; and item 6 and 11 were not vague or overbroad because there was a quality assurance review including a administrative and technical review in the case. Thus, the records should have been disclosed to plaintiff who entitled to records not exempted pursuant to FOIL.

FOIL: Laboratory Case No. FB04-0864 and FB04-0684

50. By letter dated July 14, 2020, Plaintiff requested to obtain records related to laboratory Case number FB04-0864 (which were the exact request for FB04-0751 above).

51. Plaintiff commenced an Article 78 proceeding (Index No. 100064/2021) in the Supreme Court, but was dismissed by the Court without prejudice to commence new Article 78

8

proceeding in the event OCME deny records related to laboratory case number FB04-0684.

52. By letter dated January 6, 2021, plaintiff requested the <u>same</u> records related to laboratory case number FB04-0684.

53. By letter dated January 29, 2021, defendant Serrette claimed that plaintiff's FOIL request is being reviewed and a response is expected by October 1, 2021.

54. By letter dated October 6, 2021, defendant Serrette stated "Your request for documents related to FB04-0684" is also denied" "You are not a named party in these files consequently this request is denied pursuant to §87(2)(b) of the Freedom of Information Law, wherein disclosure would constitute an unwarranted invasion of personal privacy."

55. By letter dated October 26, 2021, plaintiff appealed the denial of records to defendant Kamelhar upon the grounds that he is the named-defendant in the files and Serrette has misrepresented otherwise.

56. Plaintiff has a property interest in non-exempted record under FOIL.

## FOIL Request: Laboratory Case No. FB04-0781

57. By letter dated March 15, 2021, plaintiff requested to obtain records related to laboratory case number FB04-0781 (which were the exact request for records under FB04-0751 above), to defendant Serrette.

58. By letter dated August 30, 2021, plaintiff re-submitted his letter dated March 15, 2021 as a new request, to defendant Serrette.

59. By letter dated September 28, 2021, plaintiff appealed defendant Serrette's non-response to his FOIL request to defendant Kamelhar.

60. By letter dated October 5, 2021, defendant Kamelhar claimed plaintiff's FOIL request letter dated March 15, 2021 and August 30, 2021, but remanded the request to defendant Serrette for response.

61. By letter dated October 6, 2021, defendant Serrette stated "Your request ...

9

[and]
is denied, You are not a named party in these files consequently this request is denied pursuant to §87(2)(b)... wherein disclosure would constitute an unwarranted invasion of personal privacy."

62. By letter dated October 26, 2021, plaintiff appeal defendant Serrette's denial to defendant Kamelhar upon the grounds that I am the named-suspect in the files.

63. Plaintiff has a property right in non-exempted records under FOIL.

## FOIL Request: Laboratory Case No. FB04-S201

64. By letter dated September 13, 2021, plaintiff requested to obtain records related to laboratory case number FB04-S201 (which were the exact request for records under FB04-0751 above) to defendant Serrette.

65. By letter dated October 6, 2021, defendant Serrette denied the request and stated "you are not entitled to documents related to FB04-S201 pursuant to Public Office Law §87(2)(a) and (b), as well as Civil Rights Law §50-b(1) and New York Executive Law §995(d).

66. By letter dated October 26, 2021, plaintiff appealed defendant Serrette's denial to defendant Kamelhar upon the grounds that his DNA is tested under FB04-S201 and, therefore, the exemption do not apply.

67. Plaintiff has a property right is non-exempted records under FOIL.

## STATEMENT OF CLAIMS

68. Plaintiff assert a substantive due process claim to informational privacy against defendant Shaler, Samples, Quigg and Gryazeva.

67. Plaintiff assert a due process and equal protection claim to a fair trial against defendant Brown, Megias, Appelbaum, Quigg and Gryazeva.

68. Plaintiff assert a due process and equal protection claim against defendant Serrette and Kamelhar.

69. Plaintiff assert civil conspiracy claims pursuant to 42 U.S.C. § 1983 and 1985 against all defendants.

## Relief Requested

WHEREFORE, Plaintiff request the Court to grant the relief as follows:
   A. Issue an injunction order defendants Shaler, or his agent to:
      1. Disclosure the records under the OCME laboratory case number FB04-0751, FB04-0684, FB04-0781 and FB04-5201;
   B. Award compensatory damages against all defendants, jointly and severally;
   C. Award punitive damages against the individual defendants in an amount to be determined by a jury;
   D. Such other relief as this Court shall deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct. Signed this 24, day of November, 2021.

Mr. Jay Bradshaw
Plaintiff-Pro Se
DIN: 08-A-3654
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

**UPSTATE CORRECTIONAL FACILITY**
P.O. BOX 2001
MALONE, NEW YORK 12953

NAME: Mr. Jay Bradshaw   DIN: 08-A-3654

SDNY
SDNY   Legal Mail

RECEIVED
SDNY PRO SE OFFICE
Legal Mail
2021 NOV 30  AM 10:13

Pro Se Office
U.S. District Court
Southern District of New York
500 Pearl Street
New York, New York 10007